The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning everyone and welcome to the Ninth Circuit. I'm so excited to be here in person. The Steel Lawyer is back in the courtroom. Thank you for being here. It's a very special day so I'm very excited to be sitting with Judge Koh, who is a new member of our court. I'm thrilled to be able to sit with her and we're both very grateful to Judge Korman who is sitting with us by designation from the Eastern District of New York. He sits with our court often and he's a wonderful judge and we really appreciate his help. So welcome to Judge Korman and welcome to Judge Koh. So with that, we have some cases that are submitted on the briefs. Aguilera-Alonzo v. Garland 20-73069 is submitted on the briefs. We have Salazar-Noriega v. Garland, which is stayed, so we're skipping over that one. We also have a case held in abeyance, Jimenez-Alvarez v. Garland. Then Rendon-Rendon v. Garland 21-70971 is submitted on the briefs. Arriaga-Hernandez v. Garland 21-70977 is submitted on the briefs. And Gonzalez-Marcial v. Garland 21-70996 is submitted on the briefs. We'll hear the other cases in the order in which they appear on the calendar. The first is Perez-Gonzalez v. Garland 20-71900. Each side will have 10 minutes. Good morning, your honors. May it please the court, my name is Stacey Tolchin and I represent Petitioner Perez-Gonzalez with my co-counsel Megan Brewer. I would like to reserve three minutes of my time for rebuttal. Petitioner was arrested by ICE officials on February 12, 2018 at his home without a warrant as a part of Operation Keep Safe. ICE was notified years before of Petitioner's presence in the United States based on secure communities due to his 2014 DUI arrest. However, ICE did not arrest him until 2018 as a part of the pre-planned Operation Keep Safe. And while ICE prepared a form I-213 the day before the arrest, it did not prepare the administrative arrest warrant that is required by the statute and regulations. Instead, ICE officers went to the parking lot of Petitioner's home, to the curtilage, and told his parents that they were Department of Homeland Security officials who needed to speak with him. When he came outside, the officers only identified themselves as Department of Homeland Security officials and did not identify themselves as immigration officers, which is required by the regulations. Petitioner was arrested and taken into ICE custody. The operation of such a coordinated arrest in the curtilage of Petitioner's home without an arrest warrant when there was no basis to believe that Petitioner was at flight risk and in violation of the requirement that immigration officers identify themselves What is the standard for determining whether a new ruling is an intervening change in the law? And what's your best case that lays out that standard? Your Honor, it's the Supreme Court's case in Beam, B-E-A-M. What it says is that any change in a civil case that applies to a case that's directly pending on appeal, this was not a final order. And so there's confusion. I think respondents seem to argue that there's a fundamental change in law requirement, but that's not the requirement. That's the requirement when there's a final order and you're seeking an untimely motion to reopen for a change in law. But this was a case that was on direct appeal. Immigration tried to order removal pending at the board. So Sanchez applies. The question is... So what is the statement of the law in Beam? In Beam, the law is that any civil case applies to a case pending directly on appeal. Sanchez was a change in the law in your view, though, anyway, wasn't it? Sanchez is the first case to allow termination at all. I mean, there's a first grant of termination in the circuit. The board obviously had a matter of Garcia-Flores. But importantly, Sanchez is the first case to establish termination and no showing of prejudice required. Because prior to the 2018 decision, even under the first Sanchez, there was a showing of prejudice that was required. And we can't show prejudice, right? There's independent evidence of alienation, lawfully obtained evidence of the DACA status. So until 2018, there was no opportunity to do this. There were other circuits. But the laws of this circuit, and certainly in 2017, when the first Sanchez was issued, precluded the termination argument. We obviously raised the suppression argument to the board, but he would have lost because there's independent evidence of alienation. But in Sanchez 1, prejudice was presumed, correct? Sanchez didn't actually have to prove prejudice. But it's a rebuttable presumption. And so all the law in this case, there's a number of cases that look at where prejudice is presumed, it's still rebuttable. And so even Sanchez gets set back down, and so it's not, there's still a prejudice requirement. But in Sanchez 1, it was remanded to terminate removal proceedings. It wasn't remanded for the government to have the opportunity to rebut any presumption of prejudice, right? I believe it was remanded to rebut the Cuba Fauci showing, if that's my memory. But Rojas Garcia is another case where there's a rebuttable presumption. So even where prejudice is presumed, there's still a prejudice requirement. And here, it's very simple. I mean, that is obviously why the case was vacated in 2017, because the government was easily able to show that there was no prejudice, because they had the family unity benefits. I'm just going to read. It says, on remand, the agency shall afford the government an opportunity to rebut Sanchez's prima facie showing that there was both a regulatory violation and the violation was egregious. It doesn't necessarily say that there is a remand to rebut any presumption of prejudice. Your Honor, the law of this circuit establishes that when there's a rebuttable presumption, I'm sorry, when there's a presumption of prejudice, it is rebuttable. And so there's a lot of cases. Looking at 2018 Sanchez. Let's look at 2017 Sanchez. 2017 Sanchez says, because the government violated a regulation meant to benefit Sanchez and because he was prejudiced by that violation, Sanchez's removal proceedings must be terminated. So in the prior paragraph, it says, where compliance with the regulation is mandated by the Constitution, prejudice may be presumed. And then the next paragraph says, because the government violated a regulation meant to benefit Sanchez and because he was prejudiced by that violation, Sanchez's removal proceedings must be terminated. So at least in Sanchez 1, it doesn't seem like there was a rebuttable presumption of prejudice. The instruction of the court was, must be terminated. The removal proceedings must be terminated. Right, but then it was withdrawn because it was erroneous. So specifically because of this issue of the family unity benefits, which established alienage. So I just think it wasn't correct, which is why they had to issue the new decision, which for the first time allows for termination without a requirement of a showing of prejudice at all. But in terms of the timing, when Mr. Perez-Gonzalez had to act, Sanchez 1 was the law. Well, that's correct, but I don't think the court could say that he was required to raise it if it's withdrawn and it's no longer the law. I mean, if he would have been on appeal and the case would have been withdrawn. But the timing was he could have filed it and then it was withdrawn after. Correct, because it was legally erroneous. So I don't think it's finding precedent that required him to raise it before the immigration judge. But more importantly, the law of the circuit, again, establishes that even when there's presumption of prejudice, it's rebuttable. I mean, I think that goes to why it was withdrawn and it reissued it in 2018. It's specifically on the same issue that's relevant here, which is establishing independent evidence of alienage, because the rehearing petition was about that in part, that they had evidence of family unity here. So he certainly could have raised it, but it was based on law that would have been withdrawn. It was no longer binding. But your argument is that a litigant does not have to raise an issue if they think there will be a future decision that withdraws existing precedent. No, my argument is that the court can't find it was required when the decision was withdrawn because it was legally erroneous. I mean, I understand, you know, he certainly could have raised it, but he can't have been required to exhaust it when that decision was withdrawn and it wasn't in accordance with the rest of the law of the circuit, which establishes that prejudice is maybe presumed but that it's rebuttable. The court's decision in Rojas Garcia is about this. There's a number of cases where initially courts had found that there was a presumption of prejudice, and then a later court will say, yes, there's a presumption, but it's rebuttable, and the government has met that burden here. And that's exactly what happened in Sanchez because of the independent evidence of alienage. And I only have two minutes left, so I'd like to reserve my remaining time if there's anything else. I actually have another question, and I'll still give you the time for rebuttal. So on the conscience-shocking issue that you started with with the facts of how this arrest happened, are you asking us to determine whether it was conscience-shocking, or do you want us to just remand to the agency for this? I think after VR, I think it's proper to remand. VR is the case that was issued two weeks ago, you're familiar with. And this, obviously, there was no factual development before the immigration judge. We had asked the board to remand for factual development, and, of course, if you look at the board's decision, it doesn't even use the word termination at all, and it only focuses on suppression. So I think after VR, it has to remand back to the board to address it. I think the proper course is for the board to send to the judge to address the termination to allow for factual development. Are there more facts that you think need to be developed? I think that the government can rebut. I mean, somebody at some point will determine if there's a prima facie showing, but I do think that VR and Sanchez allow the government to offer rebuttal to a prima facie showing of an egregious violation. So nothing in the record indicates there was a warrant. The I-213 usually says that there's an administrative warrant. It clearly does not say that here. But I think, at a minimum, the case law requires the government the opportunity to rebut that in a factual development. Thank you. I'll still give you two minutes to reply. I can't complain on that. And we'll hear from the government. Thank you. Thank you, Your Honors. May it please the Court, my name is Rachel Browning, and I represent the respondent, U.S. Attorney General. In this case, the board did not abuse its discretion by declining to remand to allow the petitioner to withdraw his admission of alienation, concession, and removability. Petitioner waived, including suppression and termination, by not raising those in the first instance to the immigration judge. And Sanchez does not change that requirement. This board has consistently held that the board does not have to address arguments raised for the first time on appeal that could have been made to the immigration judge. This includes any procedural due process, constitutional claims. And, in fact, when you have a situation where now the petitioner is challenging or disputing certain facts contained in the I-213, these are precisely the kinds of challenges that should have been brought to the attention of the judge in the first instance. Instead, through counsel, prior counsel, I'm sorry, the petitioner admitted the allegations contained in the NTA and ceded removability.  She said yes, and nobody ever made any arguments that this evidence was obtained illegally. But there has been a futility exception to exhaustion, right? You would acknowledge that if there is no reason to make an argument, and then the law later changes that that has been considered an exception to exhaustion? In certain cases, yes, but I don't think that, I don't think futility, the futility argument can be made here because, as the board pointed out, Sanchez did not fundamentally change the law of when a case could be suppressed or terminated because of impropriety with respect to the arrest. It simply added, it simply addressed. Your sound is breaking up. I don't know whether there's anything you can do about that on your end. I apologize. I'm not sure. I have a strong signal here. Let me see. What Sanchez said is that in certain situations where conduct is particularly egregious and truly content talking, termination without prejudice could be warranted regardless of the presence of independent evidence of alienage. And I think it's important that the court pointed out that this was really for the truly rare case. It was not a per se ruling that then would require the board to reopen and revisit any case in which the petitioner comes after the fact. It was the first case that said that there might not be a prejudice requirement though, right? I don't know of any other case. Can you point me to any other case that said prejudice is assumed in one of these kind of egregious violation cases? Now, you might not think this is an egregious violation, and I think that's a separate argument. But the idea that in an egregious violation there isn't a prejudice requirement, doesn't that come from Sanchez too? Correct. But that doesn't absolve petitioner from raising these arguments from the very beginning in a way provided by petitioner. These issues were presented before the IJ, and the court took issue with the way the immigration judge and then the board analyzed the factors presented and the burden shifting and all of that. So this, you know. So let me ask you a question. In Sanchez too, the language is the violation was egregious, deprived the petitioner of fundamental rights, or prejudiced the petitioner. You're saying none of that is new. Is that the government's position? Well, so the remedy possibly is new, and to the extent that Sanchez says that now you can receive termination without independent alias or maybe without a presumption of prejudice. But the procedures for raising any of these claims have been before the IJ and before the court. But Sanchez 1 provided for termination of proceedings. Without prejudice, correct. So to that extent, that's not a new go ahead. Well, and I just would point out that, again, this is in the context of a motion to remand, which has the same standard as a motion to reopen, where you're presenting new facts that could not have been previously presented. If this arrest was so egregious, there is nothing that prevented the petitioner from raising these facts to the immigration judge challenging the invisibility of the I230. But there was no reason for him to do that at that point, right? Because it was clear they knew he was an alien because of his DACA application. So there was nothing they could get from making that argument at that time, right? Well, the difference, as I would point out, between this case and Sanchez, and the reason that the court in Sanchez decided that termination without prejudice was required was because they needed to hold the government to the burden of going through the proper channels, and they would not have found, they would not have, but for the illegal arrest, they would not have known of his immigration status. They solely detained him because of race. In this case, the I213 says that they knew of petitioner's status because of his two DUI convictions, and that's why they wanted to question him. Nobody at his house, according to the I213, objected to the presence of DHS. They basically consented to them appearing and questioning their questions. So this isn't the same, so the posture is different. And, again, these are, to the extent that there's a factual dispute now, is precisely why these sorts of claims need to be brought to the immigration judge in the first instance. And Sanchez does not create a per se category now of cases that need to be reopened. So how do you define an intervening change in the law, and what is the best case to support your method or standard for identifying an intervening change in the law? Do you agree with the question about the law? The standard required is still abusive. I do not have off the top of my head the presidential board decision that it looks to when there's a change in the law requiring remand. But one thing the board does look to is would this change the results of the case. Sanchez would not change the result in this case. But is that because you think this wasn't egregious? Because there is independent evidence available stemming from the DUI convictions, which is what DHS used in order to confront and question Petitioner in the first instance. They did not acquire their information about his immigration status through the unlawful arrest. They already knew of his illegal status prior to their arrest, which makes it slightly different from Sanchez, where the only reason he was detained was because of his race. But shouldn't that be an issue that the BIA decides or the immigration judge decides in the first instance? Well, that's our argument, yes. All of this, I mean. No, if we find that there was an intervening change in the law, if we disagree with you that Sanchez 1 provided a rebuttable presumption of prejudice, but that Sanchez 2 eliminates that requirement, if the violation was egregious or there was a deprivation of fundamental rights, if we disagree with you on the intervening change in the law, then shouldn't this be remanded? Yes, so we point that out in our brief but no footnote. I say that if the court disagrees with how the board analyzed the case and that it's not an issue that should have been exhausted. I'm sorry, but then in that instance, you would concede that the appropriate action for this court would be to remand it, correct? Yes. If the court believes that this is something that the board was required to address in the first instance,  then yes, the board should address whether this was a violation, whether it was egregious, whether there should be prejudice, all of those issues in light of Sanchez. But again, we stand by our position that regardless of Sanchez, which again the court said only applies to a remote subset of cases, that does not absolve the petitioner from raising any challenges that he has regarding disability suppression and possible termination of his case. That should have been brought to the IJ in the first instance. But Pat, I just still don't understand why he would have made the argument when he knew they had his DOCA application. It wasn't until Sanchez II that he had the possibility that he could get termination without a prejudice showing. The prejudice showing is whether they have the evidence some other way. Here, they have the DOCA application, so they have his alienage some other way. But because of that, I don't see how he should have made this argument before Sanchez II. Because the law, I'm not sure I understand. I mean, again, we're talking about the board reopening a case. When a petitioner goes before the IJ, they can admit and concede removability, or they can challenge the facts in the I-213 and say they should not have been brought to proceedings because of an illegal arrest. That has always been the case. But he couldn't have gotten a remedy that would have helped him, right? Pardon? He could not have gotten a remedy that would have helped him. Because he does not have a remedy. But that's because you don't think the violation is egregious? That's because there is independent evidence of alienage after, I'm sorry, that preceded his arrest. Unlike Sanchez, when the officers questioned him, they already knew that he was present in the United States without permission. Based on his DUI convictions, not DACA, his DUI convictions. Okay. But for whatever reason, they knew his alienage. And Sanchez II says egregious enough violations can lead to termination, regardless of whether we have another source of knowing your alienage, right? It also recognized, that's correct, but it also recognized the burden that that would place on the government, which is why it could only be in truly egregious situations. The petitioner did not, nothing in his evidence would suggest to the board that this case was analogous to Sanchez. And so the question is, if the board abused its discretion by looking at the evidence that he presented with one statement and two cases, asking to withdraw his admission, based on the arguments he made to the board, the board made the right decision that he should not be permitted to withdraw his admission. Because there was nothing preventing him from doing that at the beginning. Can I clarify, is your position that termination without prejudice of removal proceedings isn't really a remedy? Because then the government can initiate proceedings, again, with independent evidence? Is that your position? Correct. That's the without prejudice means the government is not prejudiced for bringing the person back to the removal proceedings. And the government, or sorry, the court recognized that in Sanchez. But the case law says that termination without prejudice of removal proceedings is a remedy. I guess I'm unclear. The case law says that is a remedy. I understand what you're saying, that you think you can then initiate a subsequent proceeding with independent evidence, which may end up ending in removal. But you're not willing to acknowledge that just having termination without prejudice of removal proceedings in the first instance is actually a remedy? Yes, Your Honor, I would agree that it is a remedy. But in this case where the posture is a motion to reopen, and you have to demonstrate that reopening would likely change the result in your case, that burden has not been met here. Because the government can come back at a later time and initiate based on either the DUI convictions or DACA at this point. Let me ask another question about whether Sanchez 2 is different than Sanchez 1. Just following up with what Petitioner's Counsel said, that when Sanchez 1 says there's a prejudice presumption, was the government able to then rebut that presumption? I think in Garcia-Flores, at least when the BIA wants to say prejudice is deemed, they can say that. But when you say prejudice is presumed, then by its natural language, the presumption is not deemed and it's something that can be rebutted. I believe in Sanchez 1, it was remanded for the board to determine whether the government had sufficient evidence to rebut that presumption. But then the court determined that they did not, and that the only basis for the arrest of Sanchez was his race, and that in and of itself was under such determinations as warranted. Okay, so they were able to rebut the presumption in Sanchez 1. So then in Sanchez 2, when you don't have to show prejudice, that has to be a change in the law. Would you agree with that or not? It's a change to the extent, it's a change in terms of cases that are truly egregious. So that gets back to my question to you. The reason you think Sanchez doesn't matter is you think this case isn't egregious. I think your answer is yes to that then. Yes, although the board did not address that because it decided that, again, this argument should have been brought to the immigration judge. Whether a violation is egregious has always been a consideration that a judge could make in the first instance. Judge Corman, do you have any questions? No. Any more questions? Okay, I think we're taking you over your time, and I think I should give you extra time for rebuttal because we took over her time. So let's do three minutes instead of two. Thank you, Your Honor. Just to clarify a couple of things. This wasn't a motion to reopen a final order. This was a case pending on direct appeal. The law changed while it was on direct appeal, and so the standards are different for reopening versus a case that's on direct appeal. The second thing I think is really vital for this case is that the board does not address termination at all. It cites Sanchez, but it conflates the argument for suppression with termination. And after BR, I think a remand is required for the board to address the specific termination argument that it just didn't do. And I think the board conflates the suppression and termination just a bit how Respondent has. Obviously, he does not need to withdraw his admission of alienage for purposes of termination. Termination allows him to admit alienage but still allows for termination of proceedings. Where there's been an egregious violation. We have a little confusion here because prejudice is used for two purposes, it seems like. So one thing is, was the egregious violation prejudicial in the sense of whether the evidence could have been in some other source, alienage evidence? But the other prejudice is what Judge Koh was asking about, is this termination with prejudice in the sense that there couldn't be a new proceeding with the other evidence? Can you speak to whether there is any point of all this? Because would there just be another proceeding even if he gets termination? Yes, Your Honor. I'd like to direct the court to the 2019 denial of the petition for rehearing in Sanchez. Because there's a, I believe it's a concurrence from Judge Pius that really talks about this. The point of termination is to hold the government accountable to these regulations and to these laws which require it to follow a process so that individuals are safeguarded. The public, whomever they're arresting, etc. That's the point of these administrative arrest warrants. We know that they're not even that burdensome. You don't need a judge to sign off. It's a single immigration officer that signs off. But what it does at least is that it holds the agency accountable to make sure that they're seeking the right person and that they're exercising all necessary caution. These are armed officers. That's the point of termination. Yes, the termination is without prejudice. The government can come back and it can choose to issue a new notice to appear. It can even arrest Mr. Perez-Gonzalez if it does a proper administrative arrest warrant. And he will have a new proceeding. And we don't know what the future may hold for him. He's been here since he was six years old. He does have two DUIs. He had DACA before. He is seeking expungements to pursue DACA again. Could you address the respondent's position was that there wouldn't be termination because the board would look at the independent evidence of alienage? I mean, I was not quite clear, but it almost seemed like the respondent was arguing that that would not take place. There wouldn't even be a termination potentially. That's the same error that the board made. That just doesn't matter for termination. One of the prongs of an egregious violation is prejudice. It's relevant there. But the other two prongs are a deprivation of a fundamental right or a conscious shocking behavior. So the admission that was made, the DACA status, none of that would be relevant for those last two prongs. There's still a remedy of termination if the egregiousness standard is met. When you said there was a different standard for reopening and direct appeal, can you elaborate on that? Yes. So when there's a final order of removal, a motion to reopen must be filed within 90 days. If it is not, you can seek either equitable tolling of that statute or sua sponte reopening. Under that sua sponte reopening for a change in law, which we use frequently, as your Honor knows, the standard there is a fundamental change in law. And so the board case law says incremental changes in law are not a fundamental change in law. But, again, that's the standard for reopening. As this was a case on direct appeal, all case changes apply. So let's say, you know, this was a case challenging deportability for a criminal conviction. If first there's, you know, a bad case that says we can look at the record for the respondent or for the petitioner, and that changes and it's incremental, that law still applies. It's always going to apply on direct appeal. And that's what should have been applied here. But, again, I do want to reiterate, the failure of the board to even mention termination or to address Sanchez as an analytically different test than Perez-Cruz, I think that's really the vital part. And after BR, I think a remand has to happen in order for it to address that issue. Anything further, Your Honor? Thank you. Thank you both sides for those very helpful arguments. This case is submitted. Thank you.
judges: FRIEDLAND, UNKNOWN, Korman